UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JULIUS C. CLARKWILLIS #726262

        Plaintiff,

v.

STEVE ADAMSON,

        Defendant.

_____/

Case No. 2:17-cv-00131

Hon. Robert J. Jonker
Chief U.S. District Judge

### REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Julius C. ClarkWillis pursuant to 42 U.S.C. § 1983. ClarkWillis claims that Defendant Steve Adamson denied him a religious diet in violation of his First Amendment rights.[1] Defendant Adamson filed a motion for summary judgment and asserts that he is entitled to

---

[1] In his response brief, ClarkWillis suggests that he also asserted a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq., (RLUIPA). However, a review of ClarkWillis's complaint reveals that he did not assert a RLUIPA claim in his complaint. Instead, ClarkWillis only claimed "[t]hat the action taken against me violates my First Amendment Rights to be free from religious discrimination." (ECF No. 1, PageID.4.) Nonetheless, the undersigned must read ClarkWillis's *pro se* complaint indulgently. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). And, "it is sufficient [if] the complaint, alone or supplemented by any subsequent filings before summary judgment, provide the defendant fair notice that the plaintiff is claiming relief under RLUIPA as well as the First Amendment." *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008). Here, ClarkWillis did not provide fair notice to Defendant Adamson in any supplement filings. The first mention of a RLUIPA claim is in his response to the summary judgment motion. Therefore, the undersigned concludes that ClarkWillis failed to assert a RLUIPA claim in this case.

qualified immunity. (ECF No. 29.) For the reasons stated below, the undersigned respectfully recommends that the Court deny Defendant Adamson's motion.

## II. Factual Allegations

The pleadings and subsequent filings in this case present a confusing picture of events. After thoroughly reviewing the Complaint (ECF No. 1) and the summary judgment briefs (ECF Nos. 29 and 36), the undersigned interprets the facts as follows.

In early 2017, ClarkWillis began studying the Islamic faith and the Holy Quran while he was incarcerated in the Ionia Correctional Facility (ICF). He alleges that his religion requires him to eat a halal diet, which means that he cannot eat pork or "pork by-products" and can only eat other meats if they were properly prepared.

On March 1, 2017, ClarkWillis requested to have his religious preference changed to Al-Islam and to take the religious diet test. On April 14, 2017, ClarkWillis signed the religious meal participation agreement and took the religious diet test. The religious test involved an interview with Chaplain Cheney. On April 26, 2017, while ClarkWillis was waiting for a decision on his diet request, he was transferred from ICF to the Marquette Branch Prison (MBP). Defendant Adamson was not involved in the decision to transfer ClarkWillis to MBP. ClarkWillis states that ICF is the only level 5 facility that provides a Muslim halal diet and that MBP does not accommodate such a diet.

On May 2, 2017, ClarkWillis received a memorandum informing him that Defendant Adamson had denied his request for the religious diet. The memorandum noted that "while it is difficult to discern sincerity based on external indicators, it was

decided not to transfer [ClarkWillis] to a facility where [his] requested religious diet could be accommodated." (ECF No. 1, PageID.4.)

ClarkWillis claims that the denial of the religious diet violated his federal rights and sues Defendant Adamson in his official capacity.[2] (ECF No. 1, PageID.2.) He seeks "to be transferred to [a] facility that provides [his] religious diet accommodation and approved for the Halal Muslim diet" and "to be compensated for the time that my rights ha[ve] been violated." (ECF No. 1, PageID.5.)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[2]  The undersigned notes that Defendant Adamson may be entitled to Eleventh Amendment immunity on the claim against him in his official capacity for monetary damages. But the Court did not address this issue in its initial screening opinion. Furthermore, Defendant Adamson has not raised this argument in his motion for summary judgment. Therefore, the undersigned will make no finding as to whether Defendant Adamson is entitled to Eleventh Amendment immunity on the claim for monetary damages.

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

**IV. Analysis**

    **A. First Amendment**

ClarkWillis claims that the denial of the religious diet violated his First Amendment rights. The First Amendment guarantees that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish a violation, ClarkWillis must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001).

Prison officials may impinge on a prisoner's constitutional right to exercise First Amendment religious beliefs if their actions are "reasonably related to legitimate penological interests." *Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

4

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. are there alternative means of exercising the right that remain open to prison inmates;
>
> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint" *Id*. Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id*. "However, 'if an inmate claimant can point to an alternative

5

that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Id.* at 484 (quoting *Turner*, 482 U.S. at 91.)

Although Defendant Adamson's position is not entirely clear, he appears to challenge whether ClarkWillis's belief is sincerely held and whether the denial infringed upon ClarkWillis's religious beliefs. Defendant Adamson also asserts that there was a reasonable basis for his decision to deny ClarkWillis's request. In his affidavit, Defendant Adamson states:

> 4.  I denied Mr. Clark-Willis' request to be placed on the religious diet because his statements provided at the time of his religious diet interview with Chaplain Cheney indicated to me that his religious dietary needs could be addressed by requesting the vegetarian substitute tray that would have already been available to him, allowing him to avoid eating meat. Instead, according to Chaplain Cheney, Mr. Clark-Willis continued to receive the regular tray which included meat, and he did not attempt to receive the meatless tray at that time, leading me to also question the sincerity of his request.

(ECF No. 29-2, PageID.299.)

ClarkWillis counters by arguing that his religious beliefs are sincerely held based on his affidavit (ECF No. 36-12) and handout entitled "Islam at a Glance" (ECF No. 36-3). ClarkWillis further states that the vegetarian tray did not meet his religious dietary needs because (1) there are several items on the vegetarian substitute tray that are made with haram (unlawful) by-products, (2) the vegetarian tray is made in the same kitchen where the haram foods are made, and (3) the

6

vegetarian tray is not available for breakfast. Thus, whether he ate from the regular food tray or the vegetarian food tray, the diet would still violate his religious beliefs.

In the opinion of the undersigned, there is a question of fact as to whether ClarkWillis's beliefs are sincerely held and whether the denial infringed on ClarkWillis's religious beliefs. In addition, the undersigned cannot conclude that Defendant Adamson's denial was "reasonable" in light of the *Turner* factors because of the lack of evidence relating to Chaplain Cheney's interview with ClarkWillis and ClarkWillis's assertion that the vegetarian diet violated his religion beliefs.

Finally, Defendant Adamson states that ClarkWillis continued to purchase non-halal foods at the prison store, such as buffalo wing blue cheese chips, whole enchilada party mix, jalapeno cheese spread, and meat-flavored ramen noodles.[3] (ECF No. 29-3, PageID.302-306.) In *Swansbrough v. Martin,* 2016 U.S. Dist. LEXIS 181356 (W.D. Mich., Oct. 4, 2016), U.S. Magistrate Judge Ellen S. Carmody evaluated a similar First Amendment claim involving the denial of a religious diet and determined that "[i]t [was] neither unreasonable nor improper for prison officials to deny special religious diets to prisoners who consume food and alcohol which is inconsistent with the requested diet." *Id.* at *9-10 (citing *Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009)). Judge Carmody also determined that "permitting Plaintiff to participate in a religious diet program when he has a demonstrated history of consuming food and alcohol in violation of the tenets of his stated religion

---

[3] The undersigned notes that Defendant Adamson did not state that he relied on this information when he denied the religious diet request.

could negatively impact prison security as such could cause resentment among prisoners who adhere to their faith's dietary restrictions." *Id.* at 10. The district court ultimately adopted the report and recommendation in part because the plaintiff did "not dispute that, on numerous occasions, he consumed non-kosher/halal food or that he consumed alcohol, both of which are inconsistent with Muslim dietary restrictions." *Swansbrough v. Martin*, 2017 U.S. Dist. LEXIS 2004 at *5 (W.D. Mich., Jan. 6, 2017).

The facts in *Swansbrough* are distinguishable from the facts in this case. Here, ClarkWillis states that he only purchased the non-halal food items so he could trade the items with other prisons. Thus, in the opinion of the undersigned, a question of fact exists as to whether ClarkWillis was actually consuming the non-halal food items or trading the food with other inmates as he suggests.

For the reasons stated above, the undersigned finds that Defendant Adamson has not established that there exists a valid, rational connection between his action and the legitimate governmental interest put forward to justify such. Accordingly, a genuine issue of fact exists.

### B. Qualified Immunity

Defendant Adamson also asserts that he is entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott,* 119 F.3d

8

425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. *Id.* The court may consider either approach without regard to sequence. *Id.*

Here, Defendant Adamson states that it is not clearly established that a prisoner has a right to halal meat entrees. But ClarkWillis is not claiming to have a right to halal meat.[4] The Sixth Circuit has "held that 'prison administrators must provide an adequate diet without violating the inmate's religious dietary

---

[4] In *Robinson v. Jackson*, 615 F. App'x 310 (6th Cir. 2015), the Sixth Circuit noted that it had previously held that vegetarian meals were halal. *Id.* at 313 (citing *Abdullah v. Fard*, 173 F.3d 854, at *1 (6th Cir. 1999)). But the Sixth Circuit also noted that it was not addressing any argument regarding cross-contamination of halal and non-halal food because it was not properly raised. *Robinson,* 615 F. App'x at 313 n.2.

9

restrictions.'" *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). And ClarkWillis states that the vegetarian diet violates his religious beliefs and that the vegetarian diet is not available for breakfast. These are genuine issues of material fact. In the opinion of the undersigned, these issues of fact make summary judgment improper. *See Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) ("[I]f genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper.").

## V. Recommendation

Accordingly, the undersigned respectfully recommends that the Court deny Defendant Adamson's motion for summary judgment.[5]

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections

---

[5] The undersigned also notes that ClarkWillis sought "to be transferred to [a] facility that provides my religious diet accommodation and approved for the Halal Muslim diet." (ECF No. 1, PageID.5.) The record establishes that ClarkWillis has been transferred to a different prison, but it is unclear whether ClarkWillis is receiving a religious. (ECF No. 36-8, PageID.358.) In *Colvin v. Caruso*, 605 F.3d 282, 295-96 (6th Cir. 2010), the Sixth Circuit found that an injunctive relief claim was not moot by a prison transfer because the challenged kosher meal policy also applied to the plaintiff at the new prison. Applying the same reasoning to the facts in this case, ClarkWillis's injunctive relief claim is not moot if he is still being denied a religious diet at a different prison.

constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: September 24, 2019

                                            /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U.S. MAGISTRATE JUDGE