UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JULIUS C. CLARKWILLIS #726262,                    Case No. 2:17-cv-00131

            Plaintiff,                    Hon. Robert J. Jonker
                                    U.S. District Judge

   v.

STEVE ADAMSON, et al.,

            Defendants.

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Julius C. ClarkWillis pursuant to 42 U.S.C. § 1983. The only remaining Defendant is Steven Adamson, who was employed as the Institutional Chaplain at the Carson City Correctional Facility and now works as the Special Activities Coordinator for the Michigan Department of Corrections (MDOC). (ECF No. 77, PageID.644; ECF No. 77-2, PageID.669.) ClarkWillis alleges that he began studying the Islamic faith while confined at the Ionia Correctional Facility in early 2017. ClarkWillis made a request to change his religious preference and for religious meals on March 1, 2017. On April 26, 2017, ClarkWillis was transferred to the Marquette Branch Prison (MBP), which did not provide a Muslim Halal diet.

On May 2, 2017, ClarkWillis received a memorandum from Defendant Adamson informing him that his request for a religious diet was denied and that he

would not be transferred to a facility that could accommodate his request for religious meals.

At some point before August 18, 2019, ClarkWillis was transferred to the Carson City Correctional Facility, where he was provided with religious meals. (ECF No. 44.)  On November 24, 2020, ClarkWillis was released from the custody of the MDOC and placed on parole.[1]

Defendant Adamson filed a motion for summary judgment. (ECF Nos. 76, 77.) ClarkWillis responded and Adamson replied. (ECF Nos. 79, 82.)  Adamson asserts (1) that ClarkWillis failed to exhaust his administrative remedies, (2) that ClarkWillis cannot establish a genuine issue of material fact regarding his First Amendment claim, (3) that qualified immunity applies, and (4) that some of ClarkWillis's claims are moot because he was moved to a prison that provided religious meals.

The last time ClarkWillis filed a pleading in this case was July 22, 2020, when he requested oral argument. (ECF No. 83.)  ClarkWillis has not updated his address and appears to have abandoned the prosecution of this case.[2]  According to ECF, ClarkWillis's address remains the Carson City Correctional Facility.

 The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendant Adamson's motion for

---

[1]    *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdoc Number=726262 (last visited Feb. 5, 2021).

[2]    A complete recitation of the facts and procedural history can be found in ECF Nos. 47 and 67.

summary judgment on grounds that ClarkWillis failed to properly exhaust his administrative remedies.  In addition, the undersigned recommends, alternatively, that the Court dismiss this case because ClarkWillis has failed to update his current address.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549

---

[3]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance

procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## Analysis

ClarkWillis submitted one relevant grievance against Adamson regarding the May 2, 2017 memorandum that denied ClarkWillis's religious accommodation request. That was **grievance MBP-17-05-00784-20z.** (ECF No. 77-4, PageID.698.) That grievance was dated May 10, 2017. (*Id*.)

ClarkWillis was required to exhaust his administrate remedies *before* he filed his federal lawsuit. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El*, 215 F.3d at 642; *see Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (stating that "[w]hile we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed").[5] Here, ClarkWillis's Step III appeal was received on July 18, 2017. The MDOC subsequently denied this appeal and mailed its decision to ClarkWillis on August 31, 2017. The Step III decision is shown below.

---

[4]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[5]    ClarkWillis's argument that the MDOC only had 10 business days to respond to his Step III appeal is not accurate. (ECF No. 79, PageID.719.) Step I and Step II responses are due within 15 days after receipt unless an extension is granted. Policy Directive 03.02.130 ¶¶ X and CC. If no response is provided within 10 days after the response was due, then the prisoner may proceed to Step III. *Id*. at ¶ FF. As previously stated, the grievance process must completed in 120 days unless an extension is granted.

**STEP III GRIEVANCE DECISION**

91431
20Z

| | | | |
|---|---|---|---|
| **To Prisoner:** | Clark-Willis | **#:** | 726262 |
| **Current Facility:** | MBP | | |
| **Grievance ID #:** | MBP-17-05-0794-20Z | | |
| **Step III Received:** | 7/18/2017 | | |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

_Richard D. Russell_

**Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs**

**Date Mailed:**    AUG 3 1 2017

(ECF No. 77-4, PageID.696.)  Thus, ClarkWillis could file his civil complaint after August 31, 2017. ClarkWillis's original complaint, however, was dated July 23, 2017 (ECF No. 1, PageID.5), post-marked July 27, 2017 (*id.*, PageID.6), and filed by the Court on July 31, 2017 (*id.*, PageID.1).  Under the so-called mailbox rule, ClarkWillis's complaint was filed on July 27, 2017 – the date of the postmark. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Richard v. Ray*, 290 F.3d 810 (6th Cir. 2002).

ClarkWillis filed this lawsuit *before* he completed the administrative grievance process. That was improper. Accordingly, it is recommended that the Court dismiss Defendant Adamson from this case without prejudice due to ClarkWillis's failure to properly exhaust the claims against him.

10

## IV.  **Failure to Prosecute**

ClarkWillis has failed to provide the Court with his new address.  He was released from prison on November 24, 2020.  But, according to ECF, ClarkWillis's address remains the Carson City Correctional Facility.  Thus, he has failed to keep his address up to date.  In addition, the last time ClarkWillis filed a pleading in this case was July 22, 2020, when he requested oral argument.  (ECF No. 83.)

The Local Civil Rules provide that dismissal is appropriate for want of prosecution due to the "[f]ailure of a plaintiff to keep the court apprised of a current address."  W.D. Mich. LCivR 41.1 provides as follows:

Local Civil Rule 41.  Involuntary dismissal for want of prosecution or failure to follow rules

41.1    A judicial officer may issue an order to show cause why a case should not be dismissed for lack of prosecution or for failure to comply with these rules, the Federal Rules of Civil Procedure, or any court order. If good cause is not shown within the time set in the show cause order, the presiding judge may enter an order of dismissal with or without prejudice, with or without costs. Failure of a plaintiff to keep the court apprised of a current address shall be grounds for dismissal for want of prosecution.

Generally, the Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order. It is well settled that the Court has inherent authority to dismiss *sua sponte* an action with prejudice for failure to prosecute.  *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962).  As the United States Supreme Court explained:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., id., at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:

11

"(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.

We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted).

Accordingly, it is alternatively recommended that the Court dismiss this case for failure to prosecute.

## V. Recommendation

The undersigned respectfully recommends that the Court grant Defendant Adamson's motion for summary judgment (ECF No. 76) and dismiss this case due to ClarkWillis's failure to properly exhaust his grievance remedies.

Alternatively, it is recommended the Court dismiss ClarkWillis's case due to his failure to keep his address up to date.

If the Court adopts this recommendation, the case will be dismissed.

12

Dated:   February 5, 2021               /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).